**BAUER–SMITH DREDGING COMPANY,**
Appellant,

v.

Roy **TULLY** et al., Appellees.

No. 6086.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 19, 1957.

Rehearing Denied Oct. 16, 1957.

**806**

Keith, Mehaffy, McNicholas & Weber, Beaumont, T. G. Schirmeyer, Houston, for appellant.

Marcus, Weller & Evans, Beaumont, for appellees.

R. L. MURRAY, Chief Justice.

The appellant, Bauer-Smith Dredging Company, brings this appeal from a judgment against it in the District Court of Jefferson County for the sum of $60,631.59 in favor of the appellees, Roy Tully, L. W. Tully, Ken Capps, W. P. H. McFaddin, Jr., J. L. C. McFaddin, Mamie McFaddin Ward and her husband, C. E. Ward, Camelia Blanchette McFaddin, a feme sole, DiVernon McFaddin Cordts and husband, E. G. Cordts and Perry McFaddin Duncan.

The appellees alleged as follows in their petitions. In January, 1948, the McFaddin Trust leased to Roy Tully and L. W. Tully a tract of land, a part of the McFaddin Ranch in Jefferson County, described in the petition; such lease was for a period of 10 years and was for the purpose of cultivating rice. The Tullys agreed in the lease contract to construct on the land a reservoir for the purpose of impounding fresh water, and were given the right to construct canals and laterals necessary to water the rice land from such reservoir. Payment for such lease was a portion of the rice harvested from the property. The appellees named, other than Roy Tully, L. W. Tully and Ken Capps, are successors to the rights of the McFaddin Trust under said lease and as such were entitled to the rentals under the terms of said lease. The Tullys planted 777 acres in rice and cultivated the crop themselves and appellee Ken Capps planted and cultivated 155 acres of such land on a 50-50 share basis with the Tullys.

On or about March 17, 1952 the United States of America, Department of the Army, entered into a contract with Bauer-Smith Dredging Company, Incorporated, to perform certain dredging work on the Gulf Intracoastal Water Ways from Port Arthur Canal to High Island in Jefferson, Chambers and Galveston Counties, Texas. The petition copied parts of such contract, including technical provisions for the disposal by the dredging contractor of excavated material. Certain drawings or blue prints in such contract are made a part thereof by reference. On each of said contract drawings is found the following:

"Note: See Paragraph TP–3 (Disposal of Excavated Material) of Specifications for Requirements Relative to Disposition of Soil." On Sheet No. 5 which reflects the McFaddin Trust lands is shown a canal with notation on the drawing: "No

Material shall be allowed to enter this Canal." This canal is later in the petition referred to as plaintiffs' "lead ditch".

On or about the 18th day of July, 1952, the Bauer-Smith Dredging Company acting by and through its agents, servants and employees operating the Bauer-Smith dredge "J. J. Mansfield" or some other dredge owned and operated by defendant were engaged in pumping spoil containing salt water on the north side of the intracoastal canal on the W. L. Gallier Survey (a part of Pipkin's Ranch) to the west of the McFaddin Trust lands, and such spoil containing salt water was negligently permitted by defendant's agents, servants and employees to drain into a fresh water canal and lead ditch constructed by the plaintiffs, Roy Tully and L. W. Tully, in connection with their rice cultivation on said leased lands. The natural drainage at such point is to the east and such fact was well known to the defendant, its agents, servants and employees or in the exercise of ordinary care should have been known to the defendant, its agents, servants and employees. In addition to such facts the drawings which were a part of the appellant's contract hereinbefore referred to expressly provided that no material should be permitted to enter said canal, but nevertheless the appellant, its agents, servants and employees failed to take the necessary precautions and to exercise reasonable care to prevent spoils and salt water from entering said canal.

On July 18, 1952 about 4:30 p. m. L. W. Tully saw that defendant was pumping said spoils and salt water into said lead ditch, and immediately went to said dredge and talked with Leverman Sidney Dronett, one of the appellant's employees, who called Captain W. H. Ohlhausen, who was the captain of said dredge. At that time Tully told Captain W. H. Ohlhausen, appellant's agent, servant and employee, that he was pumping salt water into his lead ditch which contained fresh water and was connected with his fresh water rice irrigation system. L. W. Tully, at said time also told Captain

W. H. Ohlhausen that he had a fresh water reservoir adjacent to said lead ditch which contained fresh water and was then being used to water appellees' rice crop. Captain W. H. Ohlhausen then called the office of appellant by radio telephone where he contacted an official of appellant, a Mr. Smith. The agents, servants and employees of appellant were then instructed by their superior in its office to pump to the south side of the intracoastal canal.

On Saturday morning, the 19th day of July, 1952, the appellant's agents, servants and employees operating its dredge began pumping spoil and salt water directly into appellees' fresh water reservoir which was constructed adjacent to the east of the lead ditch, and adjacent to the canal bank on the south. At the time it began pumping salt water into the fresh water reservoir its employees were acting under the supervision and control of Superintendent Clovis Duplechan. Prior to the time its dredge started pumping into said fresh water reservoir on Saturday morning, July 19, 1952, appellant's agent and employee, Superintendent Clovis Duplechan, was told that such area within the bounds of the levees was a fresh water reservoir and was being used to water Tully's rice crop. Nevertheless with full knowledge that the dredge would be pumping spoil and salt water directly into the fresh water reservoir, and before such operation had begun, the appellant's agent Clovis Duplechan said that he did not care, that he was giving the orders, and his orders to the crew on the dredge were to pump said spoil and salt water into said reservoir. Such action by appellant, its agents, servants and employees was malicious, intentional and willful and the defendant was guilty of gross negligence in deliberately contaminating said fresh water reservoir with salt water. As a direct result of such trespass by the acts of appellant, its agents, servants and employees in putting salt water and spoil in the lead ditch and fresh water reservoir appellees suffered the damages alleged.

Appellees' water system is constructed and connected together in such manner that when the lead ditch was contaminated with salt water of a high salt content that it was impossible to water the 932 acres of rice because the salt water would have been drawn by the pumps onto his rice and would have contaminated and injured the rice crop. As a result of the spoil and salt water in the lead ditch, appellees could not move water from the fresh water reservoir without getting the salt water in the lead ditch on their crop, and as a direct result of such trespass they could not water their rice crop for a full period of eleven days at a time when said rice was booting and at a time when said rice crop needed water and should have been watered.

The crop of Zenith rice on the 277 acres was watered first, the 252 acre tract second, the 248 acre tract third and the 155 acre tract last and it was some fifteen to twenty-five days before all of the rice was completely watered.

Appellant recognized its responsibility for said trespass and authorized Tully to secure the services of a dragline and to place a temporary levee across the lead ditch in order to block off the salt water in said ditch from the remainder of the water system, and to send the bill to the appellant. Said dam was constructed on or about July 28, 1952 and the first water was pumped on the rice from the reservoir on July 29, 1952. At said time the water flowing on the rice from the reservoir contained from 42 to 64 grains of salt per gallon of water. The water in said reservoir also contained salt as a result of said trespass.

As a result of such intentional and willful trespass in watering the rice crop, the salt content in the water caused yield per acre to be considerably reduced. The petition then alleges in detail the amount of rice produced on the various tracts and the price received per barrel of such yield. It also alleged the reduced yield of 3 barrels per acre on one tract and 5.4 barrels per acre on another tract; 4.7 barrels per acre on

another and 7.2 barrels per acre on the 155 acre tract. It alleged a net damage for decrease in yield of rice in the amount of $33,414.40, apportioned among the various appellees.

The petition also alleged additional costs incurred by Roy Tully and L. W. Tully in an effort to mitigate damages and save their rice crop. These items included extra pumping of water 49 days at a cost of $50 per day; dragline work in building a dam across the lead ditch at a cost of $100.

The lead ditch was filled with spoil and muck for a distance of one mile, and at a distance of one-half mile from the canal the silt, spoil and muck was two and one-half to three feet in depth. Silt, spoil and muck was pumped into the fresh water reservoir and the reasonable cost of removing it from the lead ditch canal and fresh water reservoir in order to place the lead ditch and reservoir in the same condition as before the trespass would be the sum of $8,000.

Because of salt water in the reservoir extra pumping for a period of 49 days in all reasonable probability be required at a cost of $50 per day. Other such special damages to the rice crop total $13,100.

It was further alleged that said acts were committed with full knowledge that said reservoir was a fresh water reservoir and was being used to water a rice crop, and was done under the direction of one Duplechan, Superintendent and Vice Principal of the appellant. Said act was done maliciously, intentionally and willfully and with intent to injure the crop and appellees are entitled to recover exemplary damages in the sum of $25,000.

Pleading alternatively, appellees alleged that if it should be determined that all or any part of their damages was not the result of a trespass on the land, leasehold and appurtenances of the appellees, then it is alleged that the agents, servants and employees of the appellant Bauer-Smith Dredging Company knew or in the exercise

of reasonable and ordinary care should have known that the terrain and drainage of the Gallier tract adjacent to the McFaddin Trust property was in the direction of the fresh water canal located on appellees' property and leasehold, and they were notified on the plats and specifications under which they were operating not to pump or allow salt water and spoil to get into such canal or lead ditch, but the appellant nevertheless, in violation of the terms of such contract and in disregard of the notice therein given, negligently pumped and allowed salt water, spoil and silt to get into said fresh water canal. The appellant, its agents, servants and employees knew or in the exercise of ordinary care should have known that such fresh water canal was connected with appellees' irrigation system and if salt water was pumped into said canal and lead ditch said rice crop would be damaged. Still pleading in the alternative, it was alleged that if L. W. Tully did not tell the appellant, its agents, servants and employees that the enclosure within the levees was a fresh water reservoir used in watering their rice crop, then it was alleged that the appellant, its agents, servants and employees knew or in the exercise of ordinary care should have known that the area enclosed within the levees was a fresh water reservoir and was then being used in connection with watering appellees' rice crop. Appellant, its agents, servants and employees were negligent in pumping salt water, spoil and silt into said reservoir and such acts of negligence were a proximate cause of and resulted in the damages previously set forth in the petition.

The following acts were alleged as specific acts of negligence on the part of the appellant:

(a) In pumping spoil, salt water and silt into an area where the terrain and drainage on the Gallier tract sloped in the direction of such fresh water canal; and in pumping salt water, spoil and silt into the fresh water canal or lead ditch;

(b) In failing to construct a levee or levees so as to prevent salt water, spoil and silt from flowing into appellees' fresh water canal or lead ditch;

(c) In failing to comply with the instructions contained on the plans and specifications on the contract entered into by the appellant with the United States government to the effect that no spoils or salt water should be permitted in said fresh water canal;

(d) In pumping salt water, spoil and silt into appellees' fresh water reservoir after being told by L. W. Tully that such area was a fresh water reservoir and was being used to water his rice crop;

(e) In failing to inquire of the office of the U. S. Engineers if it was proper to pump spoil in appellees' fresh water reservoir after being notified of same;

(f) The failure of appellant's agent, Clovis Duplechan, to make inquiry of his superiors as to whether they should pump salt water and spoil in appellees' fresh water reservoir;

(g) That appellant, its agents, servants and employees were negligent in failing to ascertain that they were in fact pumping into appellees' fresh water reservoir which was a part of his water system used to water their rice crop;

(h) In pumping salt water, spoil and silt in the fresh water reservoir when appellant knew or in the exercise of ordinary care should have known that same was a fresh water reservoir and was used to water appellees' rice crop;

(i) In failing to ascertain the location of said fresh water canal and reservoir upon an inspection of the area adjacent to the canal on the north prior to beginning said work.

Further pleading in the alternative, it was alleged that the appellant's agents, servants and employees were advised on July 18, 1952

by L. W. Tully that they were pumping spoil and salt water into his lead ditch and fresh water canal and also advised its agent, Captain Ohlhausen, that he had a fresh water reservoir adjacent to said lead ditch which contained fresh water and was then being used to water his rice crop. Ohlhausen informed Duplechan, appellant's superintendent, of such fact prior to the time its agents, servants and employees began pumping spoil into the fresh water reservoir on July 19, 1952. The act of appellant's agents, etc., in pumping salt water into the reservoir after being advised of its use to water rice was done willfully and maliciously and appellant's agents were guilty of gross negligence in doing so and appellees should recover exemplary damages in the sum of $25,000 for such conduct.

The petition also alleged an alternative measure of damages, setting out in addition to that as to damages to the rice crop two other computations of damages because of injury to their rice crop which show the amount to be $33,414.40.

Appellant answered by special exceptions, general denial and a counterclaim. Such counterclaim disappeared in the course of the trial and it is not included in the matters on appeal.

The appellant, by way of special exceptions, alleged as follows:

(1) Plaintiffs' petition does not state a cause of action at law, and defendant prays that the petition accordingly be dismissed with costs, save and except defendant's counterclaim.

(2) That the United States of America is a necessary and indispensable party and is the real party in interest to this cause of action and the original petition filed by plaintiffs is fatally defective by reason of the nonjoinder of a necessary and indispensable party and the real party in interest and plaintiffs' cause of action should accordingly be dismissed.

(3) That by reason of a perpetual right and easement to discharge dredged material upon plaintiffs' land which is held by the United States of America, the defendant, as a contracting agent for the United States, had at all times mentioned in plaintiffs' petition, a paramount legal right to deposit dredged material upon the land described in plaintiffs' petition, irrespective of how said land was used and plaintiffs, in fact and in law, were trespassing or encroaching upon a perpetual easement held by the United States and under which defendant performed dredging services described in plaintiffs' petition.

(4) That the defendant, as a government contractor cannot as a matter of law be sued by the plaintiffs.

The record does not show what action, if any, was taken by the trial court in regard to these exceptions.

Appellant filed a motion for summary judgment, attached to which were several affidavits, a copy of the right of way and easement from the McFaddin Trust to the United States of America and a copy of the contract between the United States of America and the appellant, Bauer-Smith Dredging Company. This motion was overruled.

The cause was tried to a jury. The jury by its verdict found as follows:

In answer to Special Issues 1 to 17, it found the yield of rice from the various tracts was decreased as a proximate result of the act of the appellant in placing spoil and salt water in the fresh water canal and reservoir, and found the amount of the probable yield in rice if the salt water and spoil had not been placed in the canal and reservoir, the number of barrels actually produced and the cost of cutting, hauling and harvesting the rice;

That the lead ditch and fresh water canal were damaged as a proximate result of permitting spoil and salt water to enter the

canal, and damages thereof were found to be $1,450;

That the fresh water reservoir was damaged as a proximate result of the appellant's pumping spoil and salt water into it and damages were fixed at $8,000;

That the Tullys incurred $1,250 additional expenses in the operation of their irrigation system as a proximate result of spoil and salt water in the lead ditch;

That Clovis Duplechan, appellant's superintendent, knew of the existence of the fresh water reservoir before the dredging started pumping spoil and salt water directly into said reservoir, and that Duplechan, with such knowledge, willfully and intentionally ordered the pumping of spoil and salt water into the reservoir; that appellees should be awarded $12,500 as exemplary or punitive damages for such willful and intentional act; that the word "material" as used in the plans which provide: "No material shall be allowed to enter this canal" included spoil and salt water; that appellant was negligent in permitting spoil and salt water to enter the fresh water canal and such negligence was a proximate cause of the damages; that L. W. Tully notified appellant's agent, W. H. Ohlhausen, on July 18, 1952 of the existence of the fresh water reservoir.

That defendant was negligent in pumping spoil and salt water into plaintiffs' fresh water reservoir after notice of the existence of the reservoir, and such negligence was a proximate cause of the damages sustained by appellees.

That appellant's superintendent, Clovis Duplechan, after being notified of the existence of the reservoir, prior to pumping salt water therein, failed to inquire of the United States Army Engineers if it was proper to pump spoil and salt water into plaintiffs' reservoir; that such failure was negligence and a proximate cause of plaintiffs' damages.

That defendant, its agents, etc., knew or in the exercise of ordinary care should have known of the existence of plaintiffs' fresh water reservoir prior to pumping spoil and salt water into said reservoir on or about July 19, 1952; that such act was a proximate cause of the damages sustained by plaintiffs.

That defendant or its agents, etc., knew or in the exercise of ordinary care should have known of the existence of plaintiffs' fresh water canal and lead ditch prior to permitting spoil and salt water to enter the canal on or about July 18, 1952, and that the act of permitting spoil and salt water to enter the canal and lead ditch was a proximate cause of the plaintiffs' damage.

That defendant deposited material taken from the Intracoastal Canal on Friday, July 18, 1952 in a place on the north side of the canal not provided in its Federal contract for the deposit of material and such act contributed to the damages sustained by the plaintiffs.

That defendant deposited material on Saturday, July 19th and 20th, 1952, in a place on the north side of the canal not provided in its Federal contract for deposit of material, and such acts contributed to the damages sustained by the plaintiffs.

All such findings are supported by the evidence.

On the verdict of the jury the court entered judgment in varied amounts in favor of the several appellees and against the appellant.

The appellant filed a motion for judgment non obstante veredicto, which was by the court overruled.

The appellant filed a motion for new trial, and later its amended motion for new trial, which was overruled. This amended motion for new trial, among other things, complains of the refusal of the trial court to grant its motion for instructed verdict, but no motion for instructed verdict is found in the transcript.

The appellant in its motion for judgment non obstante veredicto presented its con-

tention that it was entitled to judgment because the interests of each and all of the plaintiffs in the trial court, appellees here, are held subject to the deed and covenant whereby their predecessor in title, the McFaddin Trust, granted to the United States of America a perpetual right of way and easement across the land involved in this suit, the McFaddin lands adjoining the Intracoastal Canal on the north side; that said deed and covenant included the right of the government to construct and maintain a canal and right of way and provided an easement to deposit dredged material during the construction and maintenance of the Intracoastal Water Ways on the land of the parties adjoining the land conveyed, reserving to the grantors only such rights and privileges in said land not converted into public navigable waters as may be enjoyed without interfering with or abridging the rights and easements conveyed by said instrument. Appellant stated that its acts and conduct so far as they are related to this cause of action were done and performed in behalf of the United States under the grant of the above easement. It further contended that the work done on which plaintiffs' petition was based was performed by the appellant pursuant to a contract with the United States Government and under the direction of the Secretary of War and under the supervision of the Chief of Engineers, and that this is shown by the uncontroverted evidence in the case. It further says that the undisputed evidence is that the appellant nowhere exceeded its authority under the contract with the United States in performing the acts complained of in this suit.

The appellant brings its appeal before this court almost entirely upon the defense stated above, taken from its motion for judgment non obstante veredicto. Such defense to the suit of the appellees is presented under its first, second, third, fifth and sixth points. By its fourth point complaint is made of recovery for damages to the realty by certain of the appellees, who do not own more than a leasehold in the property.

Appellant's points are worded as follows:

"First Point

"The trial court erred in failing to recognize the defendant's defense that the plaintiffs had previously given the United States Government the right of way and easement to do the very things made the basis of this suit—to dump spoil on the land of the plaintiffs in the area involved in this suit.

"Second Point

"The trial court erred when it refused to rule that there can be no recovery from this defendant contractor because the acts complained of were legally authorized by the government to improve navigation and such acts should be regarded as the acts of the government and not the personal acts of the contractor.

"Third Point

"The trial court erred when it failed to recognize that there can be no recovery as a matter of law against a government contractor on the ground that he has abused a discretion given him by the government.

"Fourth Point

"There can be no recovery for damages to the realty because the plaintiffs who own the land are not seeking damages with respect to the realty, and the plaintiffs who are tenants upon the land and who are seeking such damages have no proper interest therein upon which to predicate such a claim.

"Fifth Point

"The damages alleged do not constitute a taking of property but were merely consequential for which there can be no recovery.

"Sixth Point

"The court erred in submitting Special Issues 24, 25 and 26, because the defendant

had a right, under the land and under the easement, to deposit spoil where it did and the acts of Duplechan in so doing could create no liability for exemplary or punitive damages."

■ We first consider the appellant's fourth point, which is its only point which is not based solely upon the appellant's contention that it is immune from liability to the appellees because of the contract it had executed with the United States of America, and because of the easement granted by the McFaddin Trust to the United States of America. Under the fourth point appellant argues that the appellees Tully had no interest in the land involved in the suit except such interest as they had by virtue of the lease to them by the McFaddin Trust; that they as tenants had no right of action for injury to the land itself and that recovery by a tenant is limited to the value of the crop lost. Appellant also attempts under this point to argue that the evidence does not support the findings of the jury in regard to the damages suffered by the Tullys, but we feel this argument is not properly brought under this point. By the wording of the point itself any argument or contention thereunder is limited to the question whether the appellees Tully have any right of recovery here because of their status only as tenants of the land which was damaged. The Tullys, as lessees in the 10-year lease from the McFaddin Trust, could recover for specific injuries to their leasehold estate in like manner as the owner of the fee may recover for injuries to the fee. Travelers Insurance Co. v. Key, Tex.Civ. App., 146 S.W.2d 813. The evidence shows that the Tullys had expended approximately $200,000 upon the lands they had leased. A large amount of this expenditure was for the construction of canals, ditches, levees and reservoirs. Their lease was for a term of 10 years and expired January 1, 1957. At the time of the injuries complained of, in 1952, the lessees had the prospect of enjoyment of the benefits of their leasehold for an additional 4 years. We think it is evident that their use and enjoyment of the leasehold estate in the lands for the remainder of the lease period was injured by damage to the canal and reservoir, and that the appellees Tully rightfully recovered damages for such injury in the judgment of the trial court.

■ The landowners themselves, however, were parties to the suit as plaintiffs and by such joinder as plaintiffs they have agreed to such recovery by their tenants. The appellees therefore regard the injuries to the ditches, canals and reservoirs as injuries to the leasehold rather than to the fee estate.

We find no error presented by this point and it is overruled.

■ Before we consider the five remaining points of the appellant, we must decide upon the contention of the appellees that all the points raised by appellant in its points 1, 2, 3, 5 and 6 should not be considered, and that matters therein contained were never properly before the trial court. Appellees contended on the trial and contend here that the appellant's sole pleading of a general denial of the appellees' allegations charging a trespass operated only to deny the act of trespass itself. They say that any special defenses of justification or excuse could not be considered over the objection of appellees that such special defenses were not available under a general denial. They say that if the appellees by their evidence had shown ownership and lease of the lands and that the appellant pumped spoil and salt water into their fresh water reservoir located thereon, thereby committing a trespass, they made out a prima facie case of trespass against the appellant and it could not introduce evidence under its plea of general denial in regard to any special defenses, such as denial of appellees' title to or right of possession of the lands, superior rights under an easement, justification or excuse. They make this same point in regard to the defense the appellant made on the basis of its contract with the United

States of America, Department of the Army.

After a long and tedious examination of the record and the reply briefs and counter reply briefs of the parties, we overrule this contention of the appellees and conclude that the basic point of complaint by the appellant is before us for determination.

In their original petition the appellees pleaded that appellant entered into a contract with the United States of America, Department of the Army, to do certain dredging work on the Intracoastal Water Ways. They alleged and pleaded certain parts of the contract and in one alternative plea the appellees alleged that the appellant, its agents, servants and employees were notified on the plats and specifications under which they were operating not to pump spoil upon certain areas shown on such maps. The contract between the United States and the appellant was introduced in evidence, and we think properly so. Since the appellees themselves pleaded the existence of the contract complained of, the appellant was not required to allege the existence of such a contract in order to rely upon it as a defense. By this holding we do not intend to approve as correct the indirect manner by which the appellant seeks to bring before us its claim of immunity from liability because of the fact that it was performing a contract for the government. The contention would have been more clear had it been contained directly and concisely in its answer. However, it did raise the point in its motion for judgment non obstante veredicto, and also set it out in its amended motion for new trial. We therefore believe that it was before the trial court and is properly preserved for review.

■ The controversy as to the easement granted by the McFaddin Trust to the United States of America to dredge and construct and maintain the Intracoastal Water Ways on the McFaddin Trust lands is more difficult to decide. Appellant did not mention it in its answer but did make some ref-

erence to it in its cross action and exceptions. It alleged it in its petition for removal to the United States District Court and it is set forth in its motion for summary judgment. The easement, however, was introduced in evidence early in the trial while the witness W. P. H. McFaddin, Jr., one of the trustees of the McFaddin Trust, was testifying as a witness. He identified it and said, "that looks like it." Counsel for appellees made no objection to introduction in evidence of this easement, but merely made the statement that if there was any conflict between the instrument introduced and the recorded instrument "we will use the one in the clerk's office." Later in the course of the trial, during the cross examination of L. W. Tully, almost the entire instrument was read to him during his cross examination and he was asked some questions about it.

In its motion for judgment non obstante veredicto the appellant presented its contention that because of the execution of the easement by the McFaddin Trust to the United States of America, the United States of America was granted the right to deposit dredged material during the construction and maintenance of the Intracoastal Water Ways on the lands adjoining the tract or parcel of land conveyed for the canal, and contended that its acts were performed in behalf of the United States under the grant of the easement. Since the easement was in evidence and this contention was made in the motion for judgment non obstante veredicto and in the motion for new trial, we think the appellant's contention was before the trial court and was properly preserved for review on appeal.

■ On October 3, 1928, the McFaddin Trust executed a right of way deed to the United States of America to a parcel of land across its lands in Jefferson County. This instrument recognized the fact that the United States of America was constructing, improving and maintaining an intracoastal water way from the Mississippi River at or near New Orleans, Louisiana,

to Galveston Bay, Texas, in accordance with a project duly authorized by Congress, and that the tract or parcel of land conveyed was required for canal and right of way purposes in connection with said work of improvement. The instrument contained the following clauses:

" * * * grant, bargain and sell unto the said party of the second part and its assigns (the United States of America) the perpetual right and easement to enter upon, dig or cut away and remove any or all of the hereinbefore described tract of land as may be required at any time in the prosecution of the aforesaid work of improvement or any enlargement thereof, and maintain the portion so cut away and removed as a part of the navigable waters of the United States; and the further perpetual right and easement to enter upon and use any portion of said tract or parcel of land as herein conveyed, not so cut away and converted into public navigable waters as aforesaid, for the deposit of dredged material, and for such other purposes as may be needful in the preservation and maintenance of the said work of improvement; and the further perpetual right and easement to deposit dredged material during construction and maintenance of the waterway on the land of the parties of the first part adjoining the tract or parcel conveyed.

"To Have and To Hold the said rights and easements unto the said party of the second part, the United States of America and its assigns, for the purpose aforesaid, forever * * *

" * * * And the said parties of the first part for themselves and for their successors and assigns, do hereby covenant with the party of the second part to warrant and defend the title of the same to the said party of the second part and its assigns against the lawful claims and demands of all persons by, through or under the said parties of the first part.

"The parties of the first part do hereby waive and release the United States of America, its officers, agents, servants and contractors, from any and all claim for damages which may result from the careful and prudent construction and maintenance of the waterway, and the deposit of spoil or other matter as hereinbefore stated in a careful manner; * * *"

The appellant contends that this easement conveyance constitutes a valid and complete defense to this suit against it as a matter of law. It says that the instrument was obviously obtained for the very purpose of preventing just such a lawsuit as this one—landowners and tenants complaining because the government's contractor, in order to preserve and maintain the intracoastal canal, has pumped spoil onto the adjoining land. It points out that the instrument provided that the use of their land by the landowner and its assigns should not "interfere with or abridge the rights and easement conveyed." It says that when landowners and their tenants, after the granting of the easement, used as a fresh water reservoir a part of the lands on which the government was granted the right to dump spoil from the canal, such use interfered with or abridged the right and easement conveyed to the government. Appellant argues that there can be no liability for dumping spoil or dredging material upon the lands of the appellees here for the reason that the United States had been given specifically the right to do so. It cites and relies on the cases of Lynn v. United States, 5 Cir., 110 F.2d 586; Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414; Atchley v. Tennessee Valley Authority, D.C., 69 F.Supp. 952; Griffeth v. Utah Power & Light Co., 9 Cir., 226 F.2d 661. These authorities support, in part, the contention of the appellant. They are authority for the proposition that the United States itself had the right to dump spoil and dredging material on the lands of McFaddin Trust involved in this suit. The right of way easement and grant therefor would be a defense in law to a suit of the appellees against the United States of America. The government, however, is not a party to this suit. The suit

is against the appellant, a contractor for the government, charging it with having carried out its contract in a negligent and willful manner and with having committed a trespass against the appellees, and with having exceeded in its actions the authority and directions given to it by its contract with the government. The appellant in its brief throughout all of the five points under discussion seeks to identify itself and its acts with the United States Government. But its acts of negligence and willfulness and its actions in dumping spoil and dredging material at places not designated for such dumping in its contract, were not the acts of the United States Government and appellant is not protected from liability by the easement granted by the McFaddin Trust to the United States Government. Where an agent or officer of the government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred. Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554. See, also, Converse v. Portsmouth Cotton Oil & Refining Corp., 4 Cir., 281 F. 981, certiorari denied 260 U.S. 724, 43 S.Ct. 13, 67 L.Ed. 482. This case involved a suit against a dredging contractor where the defense was made that the contractor was not liable for any injuries caused by him because he was engaged in the performance of a government dredging contract. That defense was not recognized and liability of the contractor was upheld. See, also, Taylor v. Westerfield, 233 Ky. 619, 26 S.W.2d 557, 69 A.L.R. 482, 489.

The appellant here had the right under the easement and his government contract to dump spoil with impunity on the lands of appellees, only at such places as his contract directed him to dump it. When it placed spoil at any other place, such act was not the act of the government, but was appellant's own act, for which it is liable.

We think the evidence supports the findings of the jury that the appellant was negligent in the performance of his contract and exceeded the authority granted and directions given in its contract with the government. It is noted that in none of its points of error on appeal does the appellant complain of the sufficiency of the evidence in any way. The appellant here was guilty of conduct making it liable to appellees, and the trial court did not err in so holding.

■ In connection with its argument that it cannot be liable for injuries to the appellees here, appellant asserts that when it completed its dredging contract with the United States Government the government inspected its work and issued it a certificate of completion of the contract; that this amounted to an adoption by the United States of all its acts and that the acts complained of and charged against it in this suit became the acts of the United States Government by adoption. We do not believe that it can be said here that the certificate by the government that the appellant had completed its work satisfactorily to the government amounts to an adoption and approval of the acts complained of by the appellees. The fact that the canal itself had been properly cleaned and dredged by the operations of the appellant to the satisfaction of the government cannot have the meaning in law that the government adopted as its own act the wrongful dredging of spoil upon the property of the appellees to their injury. The acts complained of here were done in a negligent and willful manner, outside of the provisions and directions in the contract itself. The wrongful portion of appellant's acts did not affect the dredging to the required depth and width. The wrongful acts did not affect the government's interest in the operation. The government suffered no harm by them. They were the agents' own tortious acts. If the actions of a government officer or agent are wrongful and are such as to create a personal liability, whether sounding in tort or in contract, the fact that the officer is an instrumentality of the sovereign does not, of course, forbid a court from taking jurisdiction over a suit against him.

Larson v. Domestic & F. Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

We overrule the appellant's points Nos. 1, 2, 3, 5 and 6. All are based on the assumption that the appellant had a right under the easement and under his contract with the United States Government to deposit spoil where it did, regardless of what additional facts were shown and found by the jury. We do not believe that the authorities are in support of this position on the part of the appellant, but on the other hand believe that the authorities are to the contrary.

We find no error presented by the appellant's points and the judgment of the trial court is affirmed.

HIGHTOWER, J., disqualified and not sitting.