The HOUSING AUTHORITY OF the
CITY OF HARLINGEN,
Texas, Appellant,

v.

STATE of Texas ex rel. Olivia
VELASQUEZ and Francisca
Jimenez, Appellees.

No. 1078.

Court of Civil Appeals of Texas,
Corpus Christi.

June 30, 1976.

Rehearing Denied Aug. 30, 1976.

Gordon L. Briscoe, Harlingen, for appellant.

James A. Herrmann, Harlingen, for appellee.

## OPINION

BISSETT, Justice.

This is an action by Olivia Velasquez and Francisca Jimenez, occupants of a low income housing project, challenging the legality of certain expenditures by the Commissioners of the Housing Authority of the City of Harlingen.

Trial was to the court, a jury having been waived. The judgment that was rendered, in part, provided:

"It is further ORDERED, ADJUDGED, AND DECREED that the defendant Housing Authority of the City of Harlingen, Texas, and the Commissioners thereof, be, and they are hereby permanently enjoined from paying to said Commissioners any fixed sum as reimbursement for expenses incurred by them in the discharge of their duties, providing, however, that said Commissioners shall be entitled to receive, periodically, and upon appropriate documented claim, all necessary expenses incurred by them in the discharge of their duties."

The Housing Authority of the City of Harlingen, Texas, hereinafter referred to as "Housing Authority" has duly appealed that judgment.

The Housing Authority was organized in 1948 and has operated since as an independent public body pursuant to Tex.Rev.Civ. Stat.Ann. Art. 1269k, commonly referred to as the "Housing Authorities Law". At the time the present suit was instituted, the Housing Authority, a non-profit body, owned and operated several low-rental public housing units for use by qualified low income persons in the Harlingen area. The funds utilized by the Housing Authority were received under federal grants from the Department of Housing and Urban Development, the issuance of notes and bonds, and from rental income.

In 1952, the Housing Authority passed a resolution authorizing payment of $50.00 per month to each Commissioner as reimbursement for expenses incurred in the performance of their duties. Such payments were regularly made thereafter.

Olivia Velasquez and Francisca Jimenez, plaintiffs in the trial court, who were residing as tenants in the Housing Authority's

units, then brought this action, contending that the payments of $50.00 per month to each Commissioner were not authorized by the statute. They specifically challenged the Housing Authority's right to make a lump sum expense payment each month in lieu of itemized accounts detailing the incurred expenses. They, in effect, argued that such payments were stipends paid in violation of § 5 of Art. 1269k of the Housing Authorities Law, and, in addition to other relief, asked that the court enjoin future similar payments.

Art. 1269k § 5, in part, provides:

"A commissioner shall receive no compensation for his services, but he shall be entitled to the necessary expense, including traveling expenses, incurred in the discharge of his duties."

The trial court, in the judgment, found that the plaintiff tenants "have the requisite standing to bring this action". In addition, the trial court also made other findings of fact, wherein, insofar as this appeal is concerned, it was found:

"The Court is satisfied that the Plaintiffs have the requisite standing to seek relief in this action."

\* \* \* \* \* \*

"The evidence showed, and the Court finds as a fact, that the $50.00-per-month payment to the Commissioners was and is an arbitrary sum and no rationale exists for the amount when related to actual expenses of the Commissioners."

The trial court, in its conclusions of law, stated:

"The conclusion is inescapable that the $50.00 monthly stipend bears no rational nor reasonable relationship to that permitted by the statute: 'necessary expenses, including travel expenses, incurred in the discharge of . . . duties.' The Court must, therefore, conclude that such payment is prohibited by statute.

The payment of any fixed amount to Commissioners will be enjoined, but a periodic payment to the Commissioners of all reasonable and necessary expenses actually incurred by them in the discharge of their duties upon itemized claim and appropriate documentation will be permitted."

■ When specific findings of fact and conclusions of law are filed, or are stated in the judgment and no additional findings are requested, and a statement of facts is also brought forward, the findings will be sustained if there is any evidence to support them. *Cortez v. Corsi,* 513 S.W.2d 648 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); 4 McDonald Texas Civil Practice § 16.10(b) (1971).

The Housing Authority, in its first point of error, contends that the trial court erred in failing to dismiss plaintiffs' suit because, as a matter of law, plaintiffs, as tenants of the Housing Authority, do not have standing to maintain this action to enjoin the Housing Authority from paying an expense allowance to each Commissioner of $50.00 per month.

■ It is a fundamental rule of law that without a breach of a legal right belonging to the plaintiff, no cause of action arises or can accrue to his benefit. *American Nat. Ins. Co. v. Hicks,* 35 S.W.2d 128 (Tex.Com.App.1931, judgment adopted). For a person to maintain a court action, he must show that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity. *City of Waco v. Akard,* 252 S.W.2d 496 (Tex.Civ.App.—Waco 1952, writ ref'd n.r. e.); *Hollar v. Jowers,* 310 S.W.2d 721 (Tex. Civ.App.—Eastland, 1958, writ ref'd n.r.e.).

■ The issue of standing to sue has been the subject of much discussion. As a general rule, in addition to those situations where the plaintiff is expressly authorized by statute or ordinance to bring a suit against public officials whose acts or omissions are attacked, a person has standing to sue, if: 1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; 2) he has a direct rela-

tionship between the alleged injury and claim sought to be adjudicated; 3) he has a personal stake in the controversy; 4) the challenged action has caused the plaintiff some injury in fact, either economic, ethic, recreational, environmental, or otherwise; or 5) he is an appropriate party to assert the public's interest in the matter, as well as his own interest. See *Linda R. S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Federal Communications Commission v. Sanders Bros. Radio Station*, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940); *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■ The Housing Authority says that while the right of a citizen to restrain acts of public officials is in some instances granted by statute, or ordinance, that in the absence of such a statute or ordinance, a private individual must possess something more than a common concern for obedience to the law before he will be permitted to maintain an injunction suit against public officials, and that a private person who wishes to restrain an official act by a public official is required to prove injury to himself different in character and form from that sustained by the public generally. It contends in this case that there is no showing by plaintiffs of a personal or protectable justiciable interest in the challenged expenditures. It argues that since the payments to the Commissioners were made out of the "Farm Labor Center Account", a collection of cash and certificates of deposit which had been acquired and accumulated by the Housing Authority over the years independent of any federal aid, and without the use of public funds raised by taxation, that the plaintiffs are not entitled to question the legality of payments from such fund. We do not agree. The source of the money paid to the Commissioners by way of a fixed allowance for reimbursement of

"necessary expenses" is not controlling on the issue of standing of plaintiffs to challenge such payments as being unauthorized by law. The fund was public money. It was not a private fund for use by the Commissioners as they saw fit in their sole discretion.

Plaintiffs contend that they have been personally injured in a tangible way by the past payments of the expense allowances in question, and that they will benefit personally in a tangible way from the permanent injunction that was granted by the trial court in the judgment. They say that the amounts of money paid to the Commissioners by way of a fixed allowance, which amounted to some $68,000.00 over the years, if such payments are, in fact, over and above the actual expenses reasonably incurred, that the excess would have been available for expenditure on the physical units themselves, or by the reduction of rents. They claim that they, as tenants, stand to benefit directly and materially in a monetary way, either by a reduction of rents (small though it may be), or by the improvement of living conditions in the housing projects, if the expenditures which are attacked are determined to be unauthorized. For those reasons, they argue that they do have standing to complain because the payments, if unauthorized, have caused economic injury to them. We agree.

The situation herein presented can be compared by analogy to a landlord-tenant relationship. Plaintiffs, as rent paying individuals, are tenants living in a low income housing project operated and maintained for their benefit by the Housing Authority, acting as landlord. By being the intended beneficiaries of the Housing Authority Law, as recognized in § 2 of Art. 1269k, plaintiffs stood to benefit from the expenditure of any funds from any sources which are available for use by the Housing Authority in connection with maintaining the dwelling units being occupied by them as tenants.

As brought out in the record, the particular housing units where plaintiffs lived, suf-

fered from partial disrepair and insect problems. There was testimony that the Housing Authority was unable to provide for extermination of vermin because of the exorbitant costs involved. It was also established by the evidence that the tenants, all of whom were required to meet requisite low-income levels before being allowed to move in, had the joint responsibility to mow the yard and the upkeep of the surrounding premises, as well as the responsibility to make certain repairs inside their respective dwelling unit. While this Court is aware of some of the problems and costs accompanying the operation of a public housing project, we take notice of the legislative purpose in providing such a project. Art. 1269k, § 9, in part, states:

"It is hereby declared to be the policy of this State that each housing authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates consistent with its providing decent, safe, and sanitary dwelling accommodations, and that no housing authority shall construct or operate any such project for profit, or as a source of revenue to the city. . . ."

If the payment of a flat $50.00 per month allowance to each Commissioner in fact was more than the amount of the necessary expenses incurred by him in the discharge of his duties, then it is inescapable that funds were directed away from the cost of management or operation of the housing project, and such necessarily increased such costs to the tenants thereof, contra to the stated purposes of the Housing Authority Law.

Other than the direct monetary benefit which would accrue to the plaintiffs and other tenants of the Housing Authority, there is owed to them a duty by the Housing Authority, acting by and through its Commissioners, to manage and operate the housing project in a manner which is consistent with the dictates of the statute. Under that duty, the Commissioners, as

public officials, are required to expend the Housing Authority's funds, public money, in a manner which will benefit the public generally, and the plaintiffs in particular. The public has an interest in whether the Commissioners of a Housing Authority, such as the one here involved, comply with statutory requirements. The Housing Authority may sue and be sued. Art. 1269k, § 8(a).

If plaintiffs are denied the right to bring and maintain this action, in effect, all tenants in a public housing project that is constructed, managed and operated under the Housing Authorities Law, will be denied the right to complain about the asserted unauthorized expenditures by the Housing Authority, even though such expenditures will result in an increased cost of living in the housing project. To allow a landlord who is acting in a fiduciary relationship of trust, who is charged with the duty of expending money to the best benefit of the tenants, to escape a tenant's complaint concerning allegedly unauthorized expenditures would be the equivalent of the sanctioning of landlord immunity from unauthorized expenditures. This, we refuse to do. Plaintiffs have standing to complain about the alleged unauthorized acts of the Commissioners, and may seek relief in the courts to protect their interest and that of the general public. The first point of error is overruled.

The Housing Authority, in its second point of error, complains that the trial court erred in enjoining the payment of $50.00 per month to each Commissioner as an expense allowance, because: 1) it may lawfully pay its Commissioners a reasonable expense allowance; and 2) as a matter of law, it did not abuse its discretion in paying such sums of money to each Commissioner as an expense allowance. The finding by the trial court that the payment of the fixed sums of $50.00 per month to each Commissioner as an expense allowance was arbitrary and unreasonable is attacked in the third and fourth points of error on the grounds of "no evidence" and "so against the overwhelming weight and preponderance of the evi-

dence adduced at the trial as to be clearly wrong".

The record shows that the $50.00 allowance was listed on the Housing Authority's Farm Labor Center Account Balance Sheets as "Commissioners travel allowance". Under the auditor's comments accompanying one of the annual audits the following comment appeared:

"The Commissioners of the Housing Authority of the City of Harlingen are being paid $50.00 per month each as a car expense allowance."

The record discloses that the only expense incurred by the Commissioners was for travel to and from the projects for the purpose of attending monthly meetings. One of the Commissioners testified: "We never traveled outside the City of Harlingen and that the drive to the projects entailed traveling no more than "two to three miles", and that the $50.00 monthly allowance was paid "whether he attended the meeting or not." Another Commissioner stated that the $50.00 expense allowance included some travel expenses but when he was asked, what his other expenses might be he said that "he was not prepared to tell that." The record fails to disclose any additional evidence by the other Commissioners as to the type or amount of expenses incurred.

While we have found no Texas cases that speak directly to the question here presented, there are cases in other states which have dealt with the issue of reimbursement of expenses to public officials generally.

The right to an expense allowance paid to a public officer was attacked in the case of *Schnanke v. Mendor,* 250 Iowa 303, 93 N.W.2d 749 (1958). The Court said:

". . . But he is allowed only the actual expense; any excess over the actual cost is an increase in compensation, a 'change in emoluments' . . .."

. . . . .

". . . There is no way of determining what portion of the lump sum allowances is for automobile expense, much less how many miles were actually traveled or what was the charge per mile; and, as has been pointed out, it is further apparent that some part of the amounts are for donations, meals not directly connected with or required by official duties, and other items not properly allowable as official expenses."

In *McWhorter v. City of Richmond,* 514 S.W.2d 678 (Ky.1974) the court was concerned with the allowance of expenses for the City's Mayor. While no ordinance was ever adopted by the City allowing such expenses, the court nevertheless stated:

". . . even if the expenses are fixed in advance '. . . the officer still will be required to submit a detailed account of the expenses, with adequate supporting data, in order to obtain credit.' "

The question of whether a claim for reimbursement of automobile expense by a public official should be allowed without a showing of actual expenses incurred was presented in *Funk v. Milliken,* 317 S.W.2d 499 (Ky.1958). The Court held:

". . . a claim for automobile expense should not be allowed without a showing of the purpose and official necessity of each trip, and the distance traveled on each trip."

The right of a public official to reimbursement for his necessary expenses incurred in the performance of his official duties must be interpreted strictly. It is the view of this Court that the legislature, in enacting § 5 of Art. 1269k, intended that the Commissioners be reimbursed for their necessary expenses only upon a satisfactory presentment of each singular expense item. The statute does not permit the payment of an expense *allowance,* travelling or otherwise. The Commissioners had no discretion in the matter. Any payment that is not supported by adequate evidence of *actual* money expended can only constitute a gift of public money or compensation to the Commissioner who receives the same, which is prohibited by law.

There is ample evidence to sustain all of the findings of fact made by the trial judge.

They are not against the overwhelming weight and preponderance of the evidence. We hold that the payment of an expense allowance to each Commissioner of $50.00 per month was not authorized by the "Housing Authorities Law". The trial court properly enjoined such future payments. The second, third and fourth points of error are overruled.

The judgment of the trial court is AFFIRMED.