MATRIX COMPUTING, INC., Appellant,

v.

H. G. DAVIS and the Lubbock National Bank, Appellees.

No. 8784.

Court of Civil Appeals of Texas, Amarillo.

July 25, 1977.

Talbert, Giessel & Stone, Inc., Fletcher F. Rhodes, Houston, for appellant.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellees.

REYNOLDS, Justice.

Granting defendants' motion for instructed verdict, the trial court rendered a take-nothing judgment in plaintiff's suit to recover damages resulting from its purchase of partially unpaid commercial paper sold by defendants through material misrepresentations. The court's actions were proper because, at most, plaintiff produced no admissible evidence of probative force upon which the jury could have made a finding of damages. Affirmed.

Plaintiff Matrix Computing, Inc., sued H. G. Davis, a trust officer of the Lubbock National Bank, and the Lubbock National Bank[1] to recover alleged damages flowing from Matrix's purchase of commercial pa-

---

1. The Fort Worth National Bank was joined as a party defendant, but the cause of action alleged against it was transferred to Tarrant County by an agreed order.

per issued by Texas Consumer Finance Corporation. Matrix asserted that when its president, Kenneth R. Lokey, sought advice on investing Matrix's stock subscription funds escrowed at the trust department of the bank in short-term securities, he was induced by Davis to buy T.C.F.C.'s commercial paper. The evidence is that on or about 1 April 1970, Lokey bought $132,500 of T.C.F.C.'s commercial paper. Afterwards, so Matrix further asserted, T.C.F.C. paid only $40,011.60 on the obligation and instituted bankruptcy proceedings, and the obligation has not been fully honored. The pleaded theories of defendants' liability were that Davis materially misrepresented facts concerning the T.C.F.C. paper offered for sale and sold by the bank, which was not a registered dealer in securities, in violations of the Texas Securities Act (1964), Vernon's Ann.Civ.St. art. 581–12. The pleaded damages were the unpaid $77,856.18 due on the commercial paper issued by T.C.F.C., the interest the bank charged on a loan required by Matrix when it did not receive payment on T.C.F.C.'s obligation, and the multiple damages authorized by the Texas Securities Act.

If Matrix suffered damages as a consequence of its purchase of the commercial paper through some wrongdoing of Davis and the bank, Matrix was required to prove its damages with sufficient certainty to enable a jury to compute them, *Jordan v. Cartwright*, 347 S.W.2d 799, 801 (Tex.Civ. App.—Fort Worth 1961, no writ), for a civil action for damages will not lie unless some damages are proven. *Burris v. Wilson*, 363 S.W.2d 885, 887 (Tex.Civ.App.—Amarillo 1962, no writ). To prove damages, Matrix had to first establish its present ownership of the commercial paper it purchased on or about 1 April 1970, that the obligation was due and unpaid, and the balance that was due. To this end, Matrix offered certain instruments as its business records and a summary thereof. Upon a series of objections making the point that the instruments and, resultingly, the summary were not shown to be admissible under the business records statute, V.A.C.S. art 3737e (Supp. 1976–77), the court excluded the instruments and the summary from the evidence.

Thereafter when Matrix rested, Davis and the bank moved for an instructed verdict on several grounds, one of which was that Matrix had failed to produce evidence of damages, an indispensable element of its cause of action. The court, without specifying a basis for its actions, granted the motion and rendered a take-nothing judgment.

In appealing, Matrix utilizes the first six and the eighth of its ten points of error to complain of the court's refusal to admit in evidence the exhibits it offered to prove damages and of the granting of the motion for instructed verdict, particularly if it led to an instructed verdict on the issue of damages. In essence, the contention is that the exhibits, numbered one through five, bearing on damages were properly authenticated for admission as business records pursuant to V.A.C.S. art. 3737e.

The admissibility of business records is controlled by the statute, V.A.C.S. art. 3737e. To overcome the otherwise hearsay nature of a business record, the first section of the statute credits it as competent evidence if:

(a) the record was made in the regular course of business;

(b) it was the regular course of that business for an employee or representative of such business with personal knowledge of the act, event or condition to make the record or to transmit the information to be included in such record; and

(c) the record was made at, near or reasonably soon after the act or event.

Section 2 of the statute provides that the identity and mode of preparation of the record may be proved by the testimony of the entrant or of the custodian or other qualified witness whose lack of personal knowledge of the contents of the record affects the weight and credibility, but not the admissibility of the record.

Matrix's only authenticating witness was Richard James Marxen, its current president. Marxen was employed by Matrix at the time of the April, 1970 transaction on

which this suit is based, but he was not then either an officer or stockholder of Matrix, and he was not then the custodian of Matrix's records. He did not participate in the transaction.

In response to questions by Matrix's counsel, Marxen acknowledged that the business records of Matrix were under his control and in his possession, that they were routinely kept in the course of Matrix's business, and that the entries upon such records were routinely made on or about the time shown by a person having knowledge of the facts so recorded. Thereupon, Matrix initially offered Marxen's handwritten figures of the April, 1970 purchase, the payments received and the balance due or loss as a summary of its books and records. The summary, of course, would not be admissible until the admissibility of the underlying records was shown. *Black Lake Pipe Line Company v. Union Construction Company, Inc.*, 538 S.W.2d 80, 92 (Tex.1976).

Next offered and excluded was exhibit no. 2, consisting of six non-negotiable promissory note forms, unsigned, but completed to show obligations of T.C.F.C. to Matrix. Two of the forms were dated April 2, 1970, for the amounts of $26,000 and $21,500; the other four bore 1970 dates subsequent to April and were completed in the amounts of $2,500, $14,000, $17,000 and $9,000. The notes carried various due dates, one of which was January 1, 1970, six months before the date of the note and three months prior to the transaction made the basis of this suit.

Marxen explained that the original instrument reflecting the $132,500 purchase was not a part of Matrix's records and he never had seen it.[2] Instead of the original instrument or some other internal record of the transaction, Marxen obtained the six unsigned notes on 14 July 1976, a week prior to trial, from Wallace Jay, the president of T.C.F.C., out of T.C.F.C.'s records, because, as Marxen stated, "My records

were definitely inadequate, and I had to obtain, from the most learned person I could find, the resulting notes that were still outstanding after bankruptcy, with Texas Consumer Finance Corporation." Conceding that he took the word of Jay that T.C.F.C. was in bankruptcy, Marxen further said, "Mr. Jay instructed me that those [notes] would support me without having the ability to show the original $132,500." Marxen was of the opinion that the original purchase was shown "from the conversation I had with Mr. Jay."

The tendered, but excluded exhibit no. 3 consisted of two letters from the bank enclosing copies of two drafts received from a bankruptcy disbursing agent in the total sum of $14,632.22 and notifying Matrix that the amounts had been applied on Matrix's bank loan. The exhibit was offered to show payment on the $132,500 purchase, but Marxen admitted that his knowledge of these credits was derived from a conversation he had with Jay and from the records Jay had.

Also excluded on tender was exhibit no. 4, a composition of a note executed by Colonial Commercial Corp. and made payable to Matrix in the sum of $36,282.63, and a copy of a check payable to Matrix for $10,430.60 representing three payments on the original obligation. The exhibit was offered to show payment and Colonial's assumption of T.C.F.C.'s obligation, but Marxen granted that he took the word of Jay that the check represented a payment on T.C.F.C.'s obligation and that Colonial had assumed the obligation of T.C.F.C.

Further offered and rejected was exhibit no. 5, a copy of Matrix's note to the bank and the bank's record of payments thereon. The purpose of this exhibit was to show the basis for computing the interest charged Matrix by the bank for the loan.

■ It is at once obvious that the instruments obtained from other business entities and offered as Matrix's business records did

---

2. Matrix's counsel proffered the hearsay representation that the original of the commercial paper had been filed with the bankruptcy court and it is not available; but, if Texas Consumer

Finance Corporation were a bankrupt, no explanation was tendered why either the record was not withdrawn or a certified copy obtained for this trial.

not meet any facet of the test for admissibility prescribed by the business records statute. There is no evidence that the records were made, or the information shown therein was transmitted for inclusion in the records, in the regular course of the businesses from whence they came by anyone with personal knowledge of the act, event or condition represented at, near or reasonably soon after the occurrence of such act, event or condition. There is no testimony that any employee of Matrix, whose "records were definitely inadequate," transmitted the information to be included in the records of the business entities purportedly furnishing the instruments to Matrix. Thus, the exhibits, including the summary, were not admissible under the business records exception to the hearsay rule. *Cooper Petroleum Company v. LaGloria Oil and Gas Company*, 436 S.W.2d 889, 891 (Tex. 1969).

Contrary to Matrix's argument, the instruments obtained from other business entities did not become admissible as Matrix's records, to be judged on their weight and credibility, simply because Marxen acknowledged that they were Matrix's records kept in the regular course of its business with the entries thereon routinely made by a person having knowledge of the facts recorded. The test for admissibility is not the mere recitation of the words of the statutory predicate; rather, in the language of *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 305 (Tex.1962),

Some employee or representative who either made the record or transmitted the information to another to record must have had *personal knowledge* of the act, event or condition in order for such record to be admissible under the business records exception to the hearsay rule.

Admittedly, Marxen had no personal knowledge of the entries contained in the instruments obtained from other business entities. Within the meaning and intent of the statute, Marxen was not a qualified witness to testify to the record keeping of another entity. Absent proof that the one who entered the information, or transmitted it for entry, in the records had personal knowledge of the data entered, the instruments were inadmissible, *North Texas Lumber Company v. Kaspar*, 415 S.W.2d 470, 474–75 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.), because "(t)he legislature has provided for their exclusion by the requirement of *personal knowledge* by an employee or representative of the 'business' . . . ." *Skillern & Sons, Inc. v. Rosen, supra*, at 305.

Therefore, the exhibits, and particularly exhibit no. 2 on which the cause of action depended, were not admissible under the business records statute. Matrix did not contend in the trial court, nor does it contend here, that one or more of the instruments was admissible under some other theory. Thus, there being no evidence having probative force upon which the jury could have made a finding of damages in favor of Matrix, the trial court correctly granted the motion for instructed verdict and rendered the take-nothing judgment.

Matrix's points one through six and point eight are overruled. The remaining points challenging the other grounds on which the motion for instructed verdict may have been granted are not reached.

The judgment is affirmed.