Refugio PEREZ, Appellant,

v.

John HERNANDEZ, Sr., Appellee.

No. 13-82-104-CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1983.

Rehearing Denied Oct. 6, 1983.

698

Donald W. Allee, Edinburg, for appellant.

Gerardo A. Gutierrez, McAllen, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

YOUNG, Justice.

This case arises from a series of conveyances, contracts and agreements between the parties with respect to the acquisition of a 15.87 acre tract in Hidalgo County. Refugio Perez sued John Hernandez Sr., alleging four distinct causes of action. One of these causes was abandoned at the outset of the trial, leaving constructive trust, usury and wrongful foreclosure to be tried. Judgment was entered for Perez on the basis of constructive trust. Hernandez counterclaimed for a judgment on a $6,000.00 note secured by a lien on the 15.87 acre tract. After a non-jury trial, the trial court granted Hernandez's counterclaim by predicating the plaintiff's recovery on his payment of the entire indebtedness. The trial court also ordered that each party pay his own attorney's fees and that the plaintiff pay the costs of suit. No findings of fact or conclusions of law were filed or requested. Perez appeals and Hernandez also complains, in a cross-point, that the judgment was erroneous.

The pertinent facts are as follows. Perez and Hernandez had engaged in business dealings for several years. These dealings involved real estate: specifically, Hernandez sold Perez a twelve acre tract and leased some land to Perez in a sharecropping arrangement. Hernandez owned the 15.87 acre tract, which is the subject of this suit, until 1973, when he sold it to Frank Meccia. As part of the consideration, Meccia executed a note for $9,500.00 to be paid in annual installments. The note provides for payment on October 5 of each year of $1,900.00 plus interest at the rate of 7%.

In 1977, Meccia sold the land to Mr. and Mrs. Ramiro Guajardo, who assumed the $9,500.00 note and executed one of their own for $10,600.00 to Meccia. Soon after the Guajardos purchased the land, they de-cided to sell it. Perez, whose twelve acres adjoined their tract, wanted to acquire it. He realized, however, that he lacked sufficient funds to buy the entire fifteen acres himself, so he contacted Hernandez and proposed that they purchase it together. According to Perez, the parties reached a decision to divide the land into an 8.87 acre parcel which would be his and a 7 acre parcel for Hernandez.

The terms of the sale were not rendered entirely clear by the pleadings or the evidence. It appears, however, that the two men were going to assume the $10,600.00 note. Hernandez would excuse payment on the remainder (a single installment of $1,900.00) of the $9,500.00 note, Perez would excuse payment of a debt (of approximately $4,000.00) owed to him by the Guajardos and the remainder would be cash. Perez paid the Guarjardos $1,000.00 and contends that Hernandez stated that he was depositing $2,000.00 with the attorney as earnest money. Hernandez testified that he did put a $2,000.00 deposit on the land. All of this was supposed to meet the Guajardos' asking price of $18,000.00 and each party was supposed to contribute half that amount. This agreement was oral and was made at a meeting which took place on January 24, 1978 in the law office of Pena, McDonald, Prestia & Zipp. The record shows that a legal secretary was present but fails to disclose whether an attorney participated in the meeting. Each party now contends that attorneys in the firm represented his opponent.

The January meeting resulted in the execution by the Guajardos of an assumption warranty deed which conveyed the land to Hernandez and Perez. Within ten days, a dispute arose between Perez and Hernandez concerning the $4,000.00 debt which Perez said the Guajardos owed him. Because there was no documentation, Hernandez felt he "was being taken." He no longer desired the joint purchase and conveyed his undivided half of the tract to Perez. In return, Perez assumed the $10,600.00 note and also executed a $6,000.00 note to Hernandez secured by a lien on the property.

Hernandez held back $2,033.00 from the $6,000.00 to pay off the $9,500.00 note. Trial testimony established that interest on the final payment, calculated by the Pena, McDonald, Prestia and Zipp secretary, was 21.29%; therefore, it was in excess of the amount provided on the note (7%) and higher than the lawful rate of interest.

As Perez observed before he began these transactions, he could not afford to purchase the land by himself. There was no payment of $2,000.00 to satisfy the interest due on the $10,600.00 note; Perez made no payments himself, so the Meccias instituted foreclosure proceedings. On April 4, 1978, the land was sold for $13,653.79 to Hernandez at the foreclosure sale.

Hernandez introduced evidence of the sums of money he has spent maintaining the land as a citrus grove. He did not offer nor did the appellant ask about the amount of sales of fruit.

The theory of the plaintiff's case appears to be as follows. Hernandez' representation that he paid $2,000.00 at the time of the closing caused the appellant to believe that this amount was deposited and applied to the interest owed on the $10,600.00 note (Guajardos to the Meccias). Perez contended that this payment was never made and that he was therefore placed in a precarious position by the appellee's misrepresentation. The petition also alleged that Hernandez maintained a relationship with the Meccias which enabled him to influence them to foreclose. Since the parties were purchasing the property as co-tenants, the appellant claims that Hernandez and he had a confidential relationship. Perez further contended that because Hernandez' breach of duty made possible the loss of the property and because Hernandez acquired that property, the court should decree that the appellee holds an interest in the land in a constructive trust for the benefit of Perez. This relief was granted conditioned upon the payment of the amounts due on the $6,000.00 note and the payment of $7,500.00 for the seven acres which would be the appellant's share. The appellant also asked that the foreclosure sale be set aside due to

lack of adequate notice. He did not prevail nor does he base his appeal on this ground of recovery.

The third claim which is the basis of a point of error is the appellant's contention that the payment on the $9,500.00 note was usurious.

■ Where findings of fact and conclusions of law were not requested or filed, the judgment of the trial court should be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Bishop v. Bishop,* 359 S.W.2d 869 (Tex. 1962); *Cortez v. National Bank of Commerce,* 578 S.W.2d 476 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Therefore, we must consider only that evidence which tends to support the trial court's judgment and disregard all evidence to the contrary. *Bishop v. Bishop,* supra, at 871.

■ Before addressing any of the appellant's points of error, we shall first dispose of the appellee's crosspoint. Hernandez' brief includes a statement that the finding of a constructive trust is supported by no evidence or is against the great weight and preponderance of the evidence. There is no discussion of facts or authorities under this point. Therefore, it is waived. See, Rule 418, Tex.R.Civ.P.

The appellant's first point of error is based on the relief granted by the trial court. He argues that there is no legal or factual sufficiency of the evidence to support the court's decision to make the conveyance conditional upon payment of $7,500.00 and all amounts due on the $6,000.00 note. Perez adds these figures together and contends that the court is charging him over $15,000.00 for the seven acre tract awarded to him.

■ The nature of this proceeding was equitable. When an aggrieved party seeks equitable relief, his actions are measured by equitable standards and the court will fashion its remedy accordingly. *Meadows v. Bierschwale,* 516 S.W.2d 125, 131–32 (Tex. 1974). Since the evidence established that the appellant owed payments on the $6,000.00 note, it was within the court's

power to order that these be made before granting the relief requested. A careful reading of the judgment shows that this is what the court did. The judgment did not make the $6,000.00 part of the purchase price for the land.

Next, we consider the "additional sum of $7,500.00" which the court ordered the appellant to pay before he could have the seven acres. In establishing constructive trusts, courts seek to prevent unjust enrichment. *Meadows v. Bierschwale,* supra at 131. Thus, the proper relief is to convey to appellant the property he would have had but for the appellee's fraud. It would be inequitable to simply give the property to the appellant, since he paid only ⅓ of the purchase price (approximately $3,000.00). Therefore, it was correct to order the appellant to pay the remainder due under the original agreement, which would be approximately $6,000.00.

More than a year elapsed between the events which gave rise to the case and the trial. Within this time, the appellee had sole possession of the property. During the time that the appellee held the property, he incurred expenses for its preservation and improvement. Whether there was any income from the property is not shown by the record. In that regard, we find guidance in the rules establishing the measure of damages in the wrongful ouster of one co-tenant by another. A co-tenant who incurs expense for the necessary preservation of property is entitled to reimbursement from the other co-tenants. *Wooley v. West,* 391 S.W.2d 157, 160 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). But, when a co-tenant goes beyond preservation and develops the property in some way, the nonjoining co-tenant has no obligation to pay for the improvements. *Cox v. Davison,* 397 S.W.2d 200, 201 (Tex.1965). Thus, the appellee was entitled to recoup preservation expenses such as taxes but not those expenses incurred in connection with his development and use of the land as a citrus grove.

In summary, in order to balance the equities between the parties, it was proper for the trial court to order the appellant to pay the remainder of the purchase price and costs of preservation of the property.[1] The court heard evidence on the terms of the original agreement, the amount of the purchase price paid by the appellant and the amount of the appellee's expenditures. From this evidence we have used the rules set forth above to estimate the damages and have concluded that the trial court's calculation is supported by the evidence. The appellant's first point of error is overruled.

In his second point, the appellant complains that the trial court erroneously denied recovery of his usury claim. The basis of this claim was the $2,033.00 paid by Perez to Hernandez to satisfy the remainder due on the $9,500.00 note. The terms of the note call for annual payments of $1,900.00 plus 7% interest. Although the final payment was not due until October of 1978, Perez paid it in February of that year. The evidence showed that the calculation was done by a legal secretary in the firm which each party says represented the other. The appellant introduced evidence that the rate of interest was 21.29%.

In his pleadings and in the testimony he elicited, the appellee attempted to avoid liability by showing that he did not calculate the interest. He contended that the law firm which did figure this interest represented the appellant and any overcharge should not be attributed to him. On appeal, the appellee contends that there was an accidental and bona fide error.

In order to avoid liability for usury because of a mistake, the lender must plead, prove and obtain a finding that there was an accidental and bona fide error on his part. *Cochran v. American Savings & Loan Ass'n,* 586 S.W.2d 849, 850 (Tex.1979). The

---

1. The appellant was also entitled to an award of the income earned from the property offset by the expenses incurred in producing that income. See *Dyer v. Hardin,* 323 S.W.2d 119, 134 (Tex.Civ.App.—Amarillo, 1959, writ ref'd n.r.e.). Here, however, there was no evidence of income introduced at the trial.

appellee did none of these. Therefore, the judgment cannot be supported on this basis. As to his other argument that he not be held liable for another's mistake, even if we accepted all of his contentions as true, those contentions would be no defense. Tex.Civ. Stat.Ann. art. 5069–1.06 (Vernon Supp. 1982) imposes a penalty on any person who receives interest greater than the lawful amount. Lenders who leave the calculations to someone else are not excused. We agree with the appellant's contention that usury was established as a matter of law. Because the statute authorizes a recovery of attorney's fees which cannot be determined without evidence on the amount of work done for the usury claim, we must reverse and remand this portion of the case to the trial court.

Finally, the appellant argues that as a prevailing party, he should not have to pay the entire amount of court costs. In general, the successful party recovers costs from his opponent. Rule 131, Tex.R.Civ.P. When there is good cause, the court may adjudge costs otherwise. Rule 141, Tex.R.Civ.P. But the court must state its reason in the record. *Neal v. Ardoin*, 594 S.W.2d 145, 147 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). In that regard, since the record in this case is silent, the court erred in assessing all costs against the appellant. In light of the recognition of the appellee's claim for payment of the $6,000.00 note, it is within the power of the court to apportion costs between the parties. See, *Okon v. Levy*, 612 S.W.2d 938, 944 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Therefore, we remand this question for further consideration consistent with this opinion.

That portion of the trial court's judgment which awarded Perez the land subject to the payments ordered is affirmed. That portion of the trial court's judgment which ordered that Perez take nothing on his cause of action for usury is reversed and remanded for a new trial. The remainder of the trial court's judgment is affirmed. Costs of this appeal are assessed one-half against each party.