**RIGHT TO LIFE ADVOCATES, INC.,**
etc. et al., Appellants,

v.

**AARON WOMEN'S CLINIC, Appellee.**

No. B14–85–794–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 21, 1987.
Rehearing Denied Sept. 10, 1987.

Thomas C. Sanders, Bruce V. Griffiths, Houston, Richard W. Schmude, Tomball, James C. Harrington, Austin, for appellants.

John W. Berkel, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a final judgment granting a permanent injunction against "right to life" demonstrators at a women's clinic. Appellants (Right to Life Advocates, Inc., Craig K. Andersen, J. (Jim) Bailey, Lee P. Helmke, Gary Loth, Barbara A. Martone, John A. Martone, Kathy Mathems, Sheila McIntosh and Joseph J. Pesl) raise ten points of error on appeal. Appellants allege that they had rights under the Texas Constitution to conduct their activities; that appellee failed to establish either irreparable injury or the lack of an adequate remedy at law; that the judgment and related writ of injunction are unconsti-

tutionally vague and overbroad and that the judgment is not supported by the evidence; that appellee is precluded by the doctrine of unclean hands from receiving equitable relief; and that the trial court abused its discretion in awarding costs to appellee and in failing to dismiss appellee's severed action for damages. Appellants also collaterally attack the constitutionality of *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We affirm the trial court's judgment.

Appellee Aaron Women's Clinic (an assumed name of Orient Sales Corporation) rents approximately one-tenth of the total office space in a building located at 6420 Hillcroft, Houston, Texas. Appellee provides pregnancy-related services, including birth control services, pregnancy testing and pregnancy terminations. Pregnancy terminations are generally scheduled on Saturday mornings. In mid-May 1985, and on each Saturday thereafter, appellants began assembling at the clinic. Some appellants carried picket signs on the public sidewalk in front of the building while others distributed literature and attempted to engage in "sidewalk counseling" with persons arriving at the building. The latter activities took place on the building's parking lot, on the interior sidewalks and near the doors to the building. Testimony varied as to the degree of obstruction, harassment and disorderliness. However, no one disputes the fact that appellants' purpose was to prevent the termination of the pregnancies of the women attempting to enter the clinic. Following unsuccessful efforts by building and clinic personnel to get the demonstrators to leave the premises, the clinic filed suit for a temporary restraining order, a temporary injunction, a permanent injunction and damages.

The trial court held a hearing on the temporary injunction on July 30 and 31, 1985. On August 14th the court issued a Memorandum of Opinion, ruling that appellee was entitled to a temporary injunction. The parties then stipulated that the evidence presented at this hearing would be incorporated at the trial on the merits of the cause for injunctive relief. The injunction issue was severed from the damage

issues by agreement of the parties. The trial was held on August 16th with each side presenting some additional evidence and argument. At the conclusion of the trial the court rendered judgment enjoining appellants from the following:

> [E]ntering or trespassing onto any portion of the private property of Plaintiff located at 6420 Hillcroft, Houston, Harris County, Texas, specifically including, but not limited to, the private parking lot of the office building at 6420 Hillcroft, the three doorways to the office building at 6420 Hillcroft, and the interior of the office building at 6420 Hillcroft, in order (1) to conduct any demonstrating, picketing, or counseling; (2) to physically confront, intimidate, or harass any customer, potential customer, employee, invitee, or tenant of the office building at 6420 Hillcroft; or, (3) to distribute or broadcast any information, in written or oral form, specifically including, but not limited to, pamphlets and leaflets.

This appeal followed.

"Right to life" vs. "Pro–Choice" is the underlying issue notwithstanding the fact that the legal issue presented is freedom of speech vs. freedom of personal choice, right to property and freedom to conduct a lawful business. Here, appellants seek access to privately-owned commercial property to impress their views on adult females who are exercising their lawful right to terminate pregnancy, and to prevent the clinic from operating a lawful business. We will not comment on the morality of the parties or the issues, as that is not our function. However, we will protect the lawful rights of the parties as the law directs us.

Appellants' points of error one through four and six through eight complain that the district court's judgment and related writ of injunction are erroneous and unlawful. Appellants base this complaint on several arguments. In their first point of error, appellants claim they have the right under the Texas Constitution to engage peacefully in free expression activities on the parking lot and interior sidewalks involved in this suit. They contend that right

is predicated upon art. I, § 8, which provides in part:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press.

The United States Supreme Court has determined that a state may adopt in its own constitution individual liberties more expansive than those conferred by the federal constitution. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980).

Although private property is involved in this case, it is not determinative of the appeal as more and more states provide access to private property (primarily shopping malls and private universities) for peaceful speech, assembly, pamphleting or petitioning purposes. See *Robins v. PruneYard Shopping Center*, 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), *aff'd*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *State v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980); *Commonwealth v. Tate*, 495 Pa. 158, 432 A.2d 1382 (1981); *Alderwood Associates v. Washington Environmental Council*, 96 Wash.2d 230, 635 P.2d 108 (1981). Appellants assert that a balancing of the competing constitutional interests, private property versus free expression, should have been considered by the trial court. We note, however, that although the court expressed doubts during the permanent injunction hearing that balancing is required unless property is characterized as quasi-public, in its Memorandum of Opinion the court did cite three factors to consider when balancing and it applied those factors to the facts in this case.

As set out by the New Jersey Supreme Court (and adopted with slight variation by other state courts) the factors include (1) the nature, purposes, and primary use of the property (i.e., its "normal" use); (2) the extent and nature of the public's invitation to use that property; and (3) the purpose of the expressional activity undertaken upon it in relation to both the private and public use of the property. *State v. Schmid*, 423 A.2d at 630. In an amicus curiae brief filed in this case, counsel for the Greater Houston Chapter of the American Civil Liberties Union and the Texas Civil Liberties Union contends that the district court placed a burden on the protestors to justify the extension of free speech onto private property. Instead, it is argued, the language of the Texas Constitution should be construed as creating a presumption in favor of free speech, even on private property, unless competing interests outweigh the constitution's preference for free speech. Before undertaking our own balancing of the three factors, we emphasize that we are looking at a set of facts specific to this case. Their weight is highly subjective. While we may be guided by other cases in reaching our decision, those cases are guidelines only. As the ACLU so aptly phrased it, "Different fact situations will produce a different balance."

We first examine the nature, purposes and primary use of the property. The five-story structure at 6420 Hillcroft is a general use office building with a variety of tenants, including a construction company, accountants, doctors and a VISA center. A major thoroughfare and a public sidewalk front the building, while a parking lot and sidewalks surround it on three sides. According to the Rules and Regulations attached to appellee's lease, the parking lot is for the use of tenants and their employees, agents and invitees.

■ In considering the use of the property, it is important to note that all the building's tenants have the right to conduct their businesses lawfully without interference and to travel to and from their workplaces without obstruction or harassment. More specifically, the clinic has the legal right to practice medicine and its patients the legal right to consult with their doctors and choose to terminate pregnancies, also without interference or harassment.

Our next focus is the extent and nature of the public's invitation to use the property. There is no question that the tenants, including the clinic, conduct business with the public and, indeed, solicit that business.

The clinic director testified that the clinic advertises in the local Yellow Pages. We find that this public solicitation differs, however, from that of shopping malls or private universities (the foci of the more recent cases seeking access to private property). The shopping mall has been said to have "assumed all of the characteristics of the downtown business district or town center." *Shad Alliance v. Smith Haven Mall*, 106 A.D.2d 189, 484 N.Y.S.2d 849, 859, *rev'd*, 66 N.Y.2d 496, 488 N.E.2d 1211, 498 N.Y.S.2d 99 (1985). Though specific businesses within the mall advertise for specific customers, the mall also has become a place of entertainment and/or focal point of community activity to which people may be invited to attend various events or simply sit and relax.

■ We do not find the open policy of a mall to apply to this property. To the contrary, the invitation from 6420 Hillcroft is not so much to use the facilities as it is to do business with specific tenants. In addition, the public is invited, *as clients*, to use the adjacent parking lot for purposes of parking vehicles. The property manager testified that the parking lot has never been advertised as a public forum (i.e., used for a political rally or a social function). Furthermore, the building's policy is to allow no soliciting, loitering, picketing or demonstrating either in the building or on the parking lot or surrounding sidewalks, and that policy is enforced by the owner and managers of the property.

Finally, we look at the purpose of the expressional activity undertaken upon the property in relation to both the private and public use of the property. Appellants are attempting to counsel with and distribute literature to parties who are visiting the clinic on Saturday mornings for pregnancy terminations. Their conduct thus directly relates to one aspect of the business conducted by the clinic within the building. Appellants argue that there is no reasonable alternative to the parking lot and interior sidewalks for reaching these parties, and that their activities are consistent with the state's interest in encouraging childbirth, protecting the potentiality of life and protecting the health of pregnant women. They argue further that the activities have been conducted peacefully, and appellee's rights of ingress, egress and parking have not been "meaningfully" violated or restricted.

■ When we analyze the facts and apply them to the balancing factors, we find that appellants' expressional activities are not in accord with the private and public uses of the office building. We hold that the private uses to which this particular building and the surrounding property are put, considered with its limited public use and the nature of the expressional activity sought to be conducted there, justify limiting the scope of appellants' activity.

As previously stated, the building provides office space for many tenants, who are paying for the peaceful enjoyment of that space. The parking lot is simply a parking facility adjacent to the building, and the interior sidewalks a means of access. Although Saturday is not commonly a workday, occupancy of the building at that time is not limited to the clinic's patients and employees. Appellants apparently did not differentiate among those whom they approached, and several tenants complained about the protestors in the parking area. Witnesses testified that their exit from vehicles and entry to the building were blocked by appellants. Although no violence was used, the freedom of movement of the business invitees was restricted by appellants. It is undisputed that appellants' purpose was to prevent the pregnant women from doing business with the clinic. Appellants therefore interfered with the lawful purposes of both patient and clinic. The public is not invited into or onto the property at 6420 Hillcroft for any and all purposes, but only those purposes consistent with the lawful pursuit of the businesses within.

Appellants contend the injunction bars them from expressing their views. We disagree. The injunction does not prevent appellants from picketing from the public sidewalk in front of the building. This area is not included in the injunction. Appellants' signs are clearly visible to anyone

entering or exiting the building and the clinic's patients are free to approach appellants for counseling if the patients so desire. In short, we find appellants' alternate means of communication to be reasonable in this instance, and the injunction a reasonable restraint.

Of major importance in this case is the physical and mental well-being of the clinic's patients. Whether or not we agree with their decisions to terminate their pregnancies, we must recognize their right to do so. Further, we cannot assume, as appellants suggest, that they have made this decision without thought and informed reasoning. A witness testified that she saw one couple arrive and leave three times before they could enter the building because they were intimidated by appellants. Other witnesses testified that patients were visibly upset by their confrontations with the demonstrators. During oral argument appellants' counsel stated that if those approached by the demonstrators did not wish to listen, they could "walk on by." However, the record raises doubts as to their freedom to avoid and escape the confrontations. Demonstrators often approached people at their car doors and then followed them to the doors of the building. The women's right to privacy and lawful right of choice must be protected. *See* related discussion in *Bering v. Share,* 106 Wash.2d 212, 721 P.2d 918, 927–29 (1986).

■ We hold that appellants' right to engage in free expression activities does not extend to the parking lot and interior sidewalks at 6420 Hillcroft. While we recognize the importance of freedom of speech in our society, it must be balanced against the rights of individuals to be free in their choice of lawful pursuits. Although we are free to think, follow and express our personal beliefs, we cannot force our thoughts and beliefs on others. Likewise, we cannot impose our moral judgments on others whose thoughts and beliefs, although contrary to ours, are nonetheless important and entitled to protection under the laws of this state and this nation. The right of free speech is not an absolute right which may be indiscriminately exercised

under all circumstances and conditions or a right which may be exercised everywhere. *Shad Alliance,* 484 N.Y.S.2d at 863 (Niehoff, J., dissenting).

This opinion is not based simply on the fact that the property is private, but rather is based on a balancing of factors in which the private use outweighs appellants' attempted public use. To paraphrase one court, 6420 Hillcroft is operated as a market place for the exchange of goods and services but not as a market place for the exchange of ideas. *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.,* 512 Pa. 23, 515 A.2d 1331, 1337 (1986). Point of error one is overruled.

Appellants' second and third points of error allege that appellee was not entitled to injunctive relief because it failed to establish irreparable harm and no adequate remedy at law. While appellants admit that deprivation of one's constitutional rights would amount to irreparable injury, they assert that no such showing was made. Appellants argue that the private property at issue, the parking lot and interior sidewalks, is not specifically covered by appellee's lease; therefore, appellee's leasehold or possessory rights were not violated by the enjoined activity. They contend that only the owner's rights are at issue, and the owner is not a party to this suit. In addition appellants contend there was no injury to appellee's rights of ingress, egress or parking.

■ We disagree with both assertions. Under the terms of the lease, appellee leased approximately 3,515 square feet in the building. Adjacent to the building is a general parking area with no assigned spaces for tenants. The parking provision (Sec. 1.B.) reads as follows:

Lessor also leases to Lessee N/A unassigned parking spaces, or assigned parking spaces if Lessor should so desire, in the garage at a monthly rate of N/A per space.

Aileen Dail, property manager for the building's owner, testified that the parking provision means that the lessor is not charging for parking. Under Sec. 6(i) ap-

pellee agreed to pay, as additional rental, its proportionate share of any increases in the lessor's costs of maintaining the parking areas. While lessor does indeed retain control over the parking lot (Sec. 8), appellee, its employees, agents and invitees have the right to park in the lot subject to certain requirements. (Rules and Regulations No. 12). Thus, by virtue of the lease and the understanding of the parties, appellee has rights in and to the parking lot. Further, a lease of premises may necessarily include the space required for the parking of a motor vehicle, and a tenant, whose lease of a building or of space in a building expressly includes the right to use an adjacent parking area, has been held to acquire an easement in that area. 51C C.J.S. *Landlord & Tenant* § 295(2) (1968). On the basis of the lease and the property manager's testimony, we hold that appellee has a leasehold right, contractual and equitable in nature, in the parking lot.

■ Under Texas law, a tenant is entitled to recover for specific injuries to his leasehold estate as the owner recovers for injuries to the fee. *Bauer-Smith Dredging Co. v. Tully*, 305 S.W.2d 805, 813 (Tex. Civ.App.—Beaumont 1957, writ ref'd n.r. e.), cert. denied, 358 U.S. 842, 79 S.Ct. 56, 3 L.Ed.2d 77 (1958). A tenant may also seek an injunction where the disturbance complained of will cause irreparable injury to his property rights and for which there is no adequate redress at law. 49 Tex.Jur.3d *Landlord and Tenant* § 106 (1986); *see Southwest Weather Research, Inc. v. Jones*, 160 Tex. 104, 327 S.W.2d 417 (1959).

■ While the building's owner is not a party to this suit, we find from the actions of its property manager that appellee has the owner's tacit approval to pursue the suit, and further, we find joinder of the owner unnecessary. The owner's policies concerning soliciting, loitering, picketing and demonstrating within and without the building have not been disputed. When the demonstrations against the clinic began, the property manager consulted with the owner and drafted two memorandums to the security guards outlining procedures to be followed in dealing with the demonstra-

tors. The memos did not expressly state that the demonstrators were to be kept off the parking lot; however, when the trial court asked, "Do I understand, notwithstanding the memo, that it is the position of the property owners that any demonstration, picketing, or people present on the parking lot or on the sidewalks surrounding the building is to be prohibited?", the manager responded affirmatively. Finally, the clinic director testified that the property manager called to tell her about complaints from other tenants and asked what appellee intended to do about the situation. We find this implies that authority to act was given by the owner, through the manager, to the appellee.

Apart from the owner/tenant issue, as noted by the trial court in its Memorandum of Opinion, appellee has an independent basis for standing to bring this suit. The court cites *Housing Authority of Harlingen v. State ex rel. Velasquez*, 539 S.W.2d 911 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) as stating the Texas rule on standing.

> [A] person has standing to sue, if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, ethic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own interest. (citations omitted)

*Id.* at 913–14. Appellee is the specific target of the demonstrators and thus has a personal stake in the controversy.

Appellants further contend that there has been no injury to appellee's rights of ingress, egress or parking. We disagree. One escort testified that the demonstrators attempted to obstruct people getting out of their cars and refused to step aside. Also, she observed that as people moved toward the building, the demonstrators did not

readily step out of the way but continued talking as they were moving backwards toward the building and blocking the path. A clinic employee testified that she was often detained by the demonstrators, even after they discovered that she was an employee. The woman was six and one half months pregnant at the time. She stated that the demonstrators continued to try to talk to her after she told them she did not want to listen. She testified she felt they were bothering her and harassing her because she was employed by the clinic.

■ We find that the violation of appellee's constitutional property rights caused irreparable harm. Furthermore, although appellee has sued for damages for loss of business and goodwill, money damages is not a sufficient remedy where appellee faces a continuation of picketing and harassment by appellants. An injunction limiting appellants to the public forums is the only adequate remedy. Points of error two and three are overruled.

■ In point of error four appellants complain that the judgment and writ of injunction are unconstitutionally vague and overbroad and therefore violate art. I, § 8 of the Texas Constitution. They argue that the language is overbroad in that it covers individuals Craig Andersen, Gary Loth and Joseph Pesl, who were not shown to have been on the premises during the demonstrations, but who were engaged in picketing activities on the public sidewalk. It further operates to cover unnamed directors, officers and possibly members of Right to Life Advocates, Inc. who also were not shown to have been on the premises during the demonstrations. Its effect is to prohibit all forms of demonstrating, picketing and counseling, as well as all forms or methods of communication, on any subject, and thus it operates as a prior restraint on free expression activities unrelated to this lawsuit. In addition, they contend the language operates to restrict such "entering or trespassing" for the described purposes without regard to the owner's interests, including the possible giving of his consent. Finally, it is argued that the language is vague in that "to

physically confront" is not defined and to "intimidate" and to "harass" do not present a clear standard of restraint. Appellants claim these terms are subject to debate, depending upon the individual approached.

Point of error four ignores the fact that the trial court found appellants were not entitled to access to 6420 Hillcroft for free speech purposes. The judgment and writ of injunction prohibits Craig Andersen, Gary Loth and Joseph Pesl, as well as anyone else associated with Right to Life Advocates, Inc., from engaging in certain specific activities (the very activities which they had been conducting) *on private property*. They are not prohibited from continuing these activities from public areas. Appellants' argument that the owner is adversely affected by the injunction is not relevant and appellants are without standing to complain. Point of error four is overruled.

Appellants next assert that appellee had unclean hands and therefore was not entitled to injunctive relief. In this regard, appellants point to appellee's violation of certain civil statutory law of Texas (point of error six); appellee's violation of certain Texas criminal anti-abortion law revived as a legal effect of *Roe v. Wade* (point of error seven); and appellee's violation of certain Texas criminal anti-abortion laws which the United States Supreme Court purported to hold unconstitutional in *Roe v. Wade* (point of error eight).

■ The unclean hands doctrine relied upon by appellants requires that one who comes into a court of equity must come with "clean hands." This is to say, a court may refuse to grant relief to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in dispute. *Grohn v. Marquardt*, 657 S.W.2d 851, 855 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). However, as appellee points out, a party asserting the unclean hands defense must show that he, and not some third party, has been injured by plaintiff's conduct. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 410 (1960). Appellants recognize that general rule but

rely on a line of cases which they contend denies equitable relief to a party who is engaged in a legal wrong or trespass. Our examination of those cases reveals no clear deviation from the requirement of injury to the complaining party. Although appellants allege injury to third persons in points of error six through eight, they have shown no injury to themselves. Points of error six through eight are therefore overruled.

In point of error five, appellants argue that the judgment is erroneous and unlawful because it is not supported by the evidence generally, and as applied to certain appellants. More specifically, appellants claim that four of the trial court's findings and conclusions are not supported by the record. Those findings and conclusions are that appellee had a vested legal right to be protected, and that right was in imminent danger of harm or damage by the conduct of the appellants; that irreparable injury would result to appellee unless an injunction were issued; that appellee had no adequate remedy at law; and that appellee was entitled to the relief given. In addition, appellants assert that there was no basis in the record for enjoining appellants Andersen, Loth and Pesl from engaging in the conduct specified in the first paragraph of the judgment as they engaged only in picketing activities on the public sidewalk.

In responding to appellants' points of error one, two, and three, we thoroughly reviewed appellee's legal standing vis-a-vis the interior sidewalks and parking lot, as well as its entitlement to the injunction. In point of error four, we discussed the trial court's prerogative to order certain parties off the Hillcroft property once it determined the property's private uses clearly outweighed its public use. It was proper to enjoin appellant and all its members, whether or not they trespassed on private property on the date in question. We therefore overrule point of error five.

In point of error nine, appellants find error and abuse of discretion in the district court's award of $977 in costs to appellee. They argue that good cause existed for each party to bear its own costs. In general, the successful party at trial recovers costs from its opponent. Tex.R. Civ.P. 131. When there is good cause, the court may adjudge costs otherwise. Tex.R. Civ.P. 141; *Perez v. Hernandez,* 658 S.W.2d 697, 702 (Tex.App.—Corpus Christi 1983, no writ). Appellants argue that there is good cause in this case because it is one of first impression in Texas. In appellants' words, these were "[f]ree expressive activities undertaken peacefully, in good faith and in the context where authoritative law has not warned against the same ..."

We find that a trial court possesses broad discretion to assess court costs, and the assessment should not be disturbed without a clear showing of abuse of that discretion. *Brook Mays Organ Co. v. Sondock,* 551 S.W.2d 160, 165 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). We find no such abuse. Most parties go into court with a good faith belief in their cause. However, this does not justify requiring their opponents to help bear the costs of attempting to vindicate erroneous beliefs. Point of error nine is overruled.

Lastly, appellants allege abuse of discretion in the trial court's refusal to dismiss appellee's severed cause of action for damages or to modify its opinion in relation to that cause of action. Appellants argue that the court's granting of the injunction will prejudice them in a trial on the damages. They also argue that the trial court in effect established a new property and constitutional law rule, and was therefore duty-bound to protect appellants from monetary exposure resulting from conduct against which no such rule had previously been applied by the courts. They cite a 1978 Supreme Court property law case in which the Court refused to apply a new ground of recovery to the cause of action before it. The Court stated that this is seldom done when rules of property law are involved because of the importance of precedence where problems regarding land or contracts are concerned. *Friendswood Development Co. v. Smith-Southwest Industries, Inc.,* 576 S.W.2d 21, 30 (Tex. 1978). We note, however, that the Court went on to cite deeds, property transactions and land developments as the areas of property law in which parties should be

able to rely on the law which existed at the time of their actions. *Id.* at 30–31.

The cause of action for monetary damages for trespass, tortious interference with business and contractual relations, libel and slander was severed from the request for injunctive relief by agreement of the parties. No testimony was allowed concerning damages. Though the claim for damages is based on the same conduct made the basis of the injunctive relief, the outcome of the one should not affect the other. Because of the wrongful acts of appellants, the injunction was necessary to establish appellee's property rights. We cannot deny appellee's rights because of a potential prejudice in the determination of damages. Appellee must still present evidence and prove any monetary losses, as a civil action for damages will not lie unless some damages are proven. *Matrix Computing, Inc. v. Davis*, 554 S.W.2d 288, 290 (Tex.Civ.App.—Amarillo 1977, no writ). We find no merit in appellants' argument and thus overrule point of error ten.

We affirm the judgment of the trial court.

PAUL PRESSLER, Justice, dissenting.

I respectfully dissent. Peaceful picketing and leafletting are expressive "speech" activities protected by the First Amendment. *United States v. Grace*, 461 U.S. 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981). A state may impose *reasonable* time, place and manner restrictions upon all expression, whether written, oral or symbolized by conduct. *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984). Such restrictions are valid if they "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace*, 461 U.S. at 177, 103 S.Ct. at 1707 (quoting *Perry Educ.*

*Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)).

There are many reasons why this injunction should be dissolved. In the labored majority opinion there are numerous wordings and assumptions which are invalid, but it will do no good to dissect its verbosity as the particular facts are such that it would be most surprising if the majority opinion would be used as authority for other cases. Suffice it to say that the language of the injunction is overbroad in that it covers Craig Anderson, Gary Loth and Joseph Pesl, who were not shown to have been on the premises during the demonstrations. It enjoins unnamed directors, officers and members of Right to Life Advocates, Inc. who were not shown to have been on the premises during the demonstrations. Its effect is to prohibit all forms of demonstrating, picketing and counseling, as well as all forms or methods of communication, on *any* subject. Thus it operates as a prior restraint on free expression activities unrelated to this. lawsuit. In addition, the language operates to restrict "entering or trespassing" without regard to the owner's interests, including the possible giving of his consent. The record indicates that the owner tacitly consented to the activities of the appellants. The appellants received no notice of any policy of the owner against allowing protestors on the premises until after the demonstrations had ceased. Finally, the language is vague in that "to physically confront" is not defined and to "intimidate" and to "harrass" do not present a clear standard of restraint. This injunction is overly broad and vague. It is neither a reasonable restriction on expression nor is it narrowly tailored to serve a significant governmental interest. The injunction should, therefore, be dissolved.

CANNON, Justice, concurring.

On motion for rehearing, I withdraw my approval of the majority opinion. I concur in the result only.